**TRANSAMERICA CONSUMER RECEIVABLE FUNDING, INC., Plaintiff,**

v.

**WARHAWK INVESTMENTS, INC., et al., Defendants.**

**Civ. A. No. 92–137–VAL (WDO).**

United States District Court, M.D. Georgia, Valdosta Division.

Jan. 26, 1994.

J. Converse Bright, Valdosta, GA, Jefferson D. Kirby, III, Bryan G. Harrison, Atlanta, GA, for plaintiff.

Timothy Ott Davis, James H. Moore, III, Albany, GA, for defendants except Gavin.

William P. Langdale, Jr., Valdosta, GA, for John E. Gavin.

### ORDER

WILBUR D. OWENS, Jr., Chief Judge.

Before the court is a motion for summary judgment by plaintiff Transamerica Consumer Receivable Funding, Inc. ("Transamerica") on its claim against defendants John and Carol Gavin ("the Gavins") and on defendants' counterclaim. Plaintiffs initially filed suit against corporate and individual defendants. The claims against the corporate defendants, Warhawk Investments, Inc., Cash In A Flash, Inc., and U Can Ride, Inc., were stayed on December 17, 1992, after the corporations petitioned for relief under Chapter 11 of the Bankruptcy Code. The Gavins, however, answered the complaint and asserted a counterclaim for breach of fiduciary duty and interference with business relations. Plaintiff seeks summary judgment on all claims.

### I

On November 1, 1993, John E. and Carol C. Gavin, proceeding *pro se*, petitioned the bankruptcy court for relief under Chapter 11 of the Bankruptcy Code.[1] Accordingly, plaintiff's claims against the Gavins are **STAYED** and the court can not address the motion for summary judgment on plaintiff's claims. 11 U.S.C. § 362(a)(1).

The automatic stay, however, does not prevent the court from addressing defendants' counterclaim as this claim is not "against the debtor". *See* 11 U.S.C. § 362(a)(1); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3rd Cir.1991) (automatic stay affects only those claims in a lawsuit

---

1. John and Carol Gavin filed a voluntary Chapter 11 bankruptcy petition in United States Bankruptcy Court, Middle District of Georgia, case no. 93–705–43, which under 11 U.S.C. § 362(a)(1) operates to stay all claims against the debtor which arose before the filing of the petition.

which are against the debtor); *First Wisconsin Nat'l Bank v. Grandlich Development Corp.*, 565 F.2d 879, 880 (5th Cir.1978) (automatic stay does not prevent district court from dismissing debtor's counterclaim); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12 (N.D.Cal.1989).

## II

The case centers on a series of commercial loan transactions between plaintiff, Transamerica, and defendants, Warhawk Investments, Inc. ("Warhawk"), Cash In A Flash, Inc. ("Cash"), U Can Ride, Inc. ("Ride") (collectively Warhawk, Cash, and Ride are referred to as "Borrowers"), and John E. and Carol C. Gavin ("Gavins" or "Guarantors"). In 1987, Transamerica's predecessor in interest, Borg–Warner Acceptance Corporation ("Borg–Warner"), as lender, and Warhawk, as borrower, entered into a loan and security agreement and a short-form promissory note. Afterwards, Borg–Warner and the Gavins executed an unconditional guarantee (the three documents are referred to collectively as the "1987 loan documents"). In the loan and security agreement, lender took a continuing security interest in all of borrower's accounts receivable among other things. (1987 Loan Security Agreement, § 3.1, Plaintiff's Exhibit 1.) Lender agreed to provide a fluctuating line of credit to borrower based upon a fixed percentage of borrower's "eligible receivables," not to exceed $500,000. (1987 Loan Security Agreement, §§ 1.10, 1.13, 1.18, 2.1.) Eligible receivables were defined in the agreement. (1987 Loan Security Agreement, § 1.17.)

In February 1989, Borg–Warner assigned the 1987 loan documents to Transamerica through an assignment amendment. Transamerica increased the ceiling on the line of credit twice. First, on August 7, 1989, the maximum amount of credit was set at $750,-000; and, second, on March 15, 1990, the amount was raised to $1,500,000. (Amendments to Loan Security Agreement, Exhibits B & C to Defendants' brief.)

In December 1990, John Gavin began organizing two companies, "Cash" and "Ride", using Warhawk's retained earnings. Gavin included the accounts receivable of both new companies as eligible receivables under the loan agreement without prior approval from Transamerica. Following a review of the first quarter of 1991, Transamerica's account representative, Mr. Rohrbaugh, informed Mr. Gavin that the accounts receivable of Cash and Ride were not to be included as eligible receivables. Transamerica reiterated its position by letter dated May 1, 1991. Rohrbaugh wrote that the receivables of these two companies were not to be reported to Transamerica as eligible receivables under the loan agreement. Moreover, all loans made by Warhawk to Mr. Gavin or his entities should be excluded from the reported eligible receivables. Rohrbaugh further requested that Mr. Gavin provide complete information on the new ventures so that Transamerica could consider the future eligibility of the accounts. (Plaintiff's Exhibit 4.)

Despite Transamerica's admonition, defendants continued to report the accounts receivable of Cash and Ride as eligible receivables of Warhawk, which resulted in an overadvance under the loan agreement of $270,-558.00 in July 1991. (Letter from Rohrbaugh to John Gavin dated July 19, 1991, Plaintiff's Exhibit 5.) In the following months, Warhawk and Transamerica negotiated a paydown of the overadvancement. On December 11, 1991, the loan documents were amended to add the Cash and Ride companies as joint and several obligors, among other things. An audit completed on the following day revealed that Warhawk was once again overadvanced contrary to representations in the newly amended loan agreement. The dispute still focused on whether the accounts receivable of Cash and Ride were eligible receivables.

On December 20, 1991, Transamerica gave notice to borrowers and guarantors pursuant to 2.4 of the loan agreement that borrowers were overadvanced by $393,304. (Plaintiff's Exhibit 10.) When borrowers failed to repay the overadvancement in the allotted fifteen days, Transamerica accelerated the entire indebtedness, as provided for in the loan agreement, and declared all sums due on January 30, 1992.

At about this same time, Mr. Gavin received a letter from Mr. Cammack, a repre-

sentative of Transamerica, requesting that Warhawk have a finance company visit Warhawk to "spread" its receivables and make a bid to either purchase or collect the receivables. Warhawk was in contact with three finance companies, one of which was All Service Financial Company ("All Service"). All Service's President, Bob Schwalb, visited defendants' stores at Lake Park and St. Mary's and analyzed the receivables. Gavin contacted Mr. Schwalb three weeks later, in mid-February 1992, at which time Mr. Schwalb offered to buy Warhawk's receivables at book value, apparently dependant on receiving financing from Transamerica.

After considering the proposed financing of All Service's purchase of Warhawk's receivables, Transamerica notified Gavin that it would not finance the proposal and that Warhawk should have other finance companies examine the receivables. Subsequent potential purchasers offered substantially less than book value which Gavin alleges is a result of Transamerica's unfair refusal to finance All Service's proposed purchase. Gavin ultimately sold the St. Mary's store receivables for $440,000 to Pioneer Credit in April 1992.

In the meantime, as a result of Warhawk's default in January 1992, borrowers, guarantors, and lender entered into a settlement and forbearance agreement on February 11, 1992. (Plaintiff's Exhibit 14.) In the agreement, lender agreed to forbear from collecting the accelerated loan until February 28, 1992 or in the event of other specified happenings. In exchange, borrowers and guarantors (1) acknowledged their debt under the note and that it was then due in full, (2) warranted that they had no defenses or setoffs to the obligation, and (3) agreed to discharge Transamerica from all causes of action arising from the loan documents, the loan transaction, or any actions taken by Transamerica or its agents prior to the execution of the forbearance agreement. (Plaintiff's Exhibit 14.) The forbearance agreement was modified by letters dated February 27, 1992, March 10, 1992, and June 22, 1992, which extended the forbearance period until July 5, 1992. (Plaintiff's Exhibits 19–21.)

On August 5, 1992, Transamerica, borrowers, and guarantors executed an Amended and Restated Settlement and Forbearance Agreement which extended the forbearance period until December 31, 1992. (Plaintiff's Exhibit 15.) In the amended agreement, borrowers and guarantors once again warranted that the entire indebtedness had been accelerated and was presently due and that borrowers and guarantors had no defenses or setoffs to the repayment obligation. In addition, borrowers and guarantors agreed to waive and discharge Transamerica from all causes of action arising from the loan documents, the loan transaction, or any actions taken by Transamerica or its agents prior to the execution of the amended agreement. (Plaintiff's Exhibit 15.) Gavin alleges that Rohrbaugh disrupted Mr. Gavin's business and personal life with telephone calls threatening a civil lawsuit and that these threats forced him to sign the amended forbearance.

A September 1992 audit revealed that borrowers were still overadvanced under the loan agreement. Lender once again noticed the default and demanded that borrowers remedy the overadvancement. After borrowers failed to cure, Transamerica accelerated the loan demanding full payment and subsequently filed suit for breach of contract.

As previously stated, borrowers filed bankruptcy under Chapter 11 of the United States Bankruptcy Code which automatically stayed plaintiff's claim against them. Guarantors answered the complaint and filed a counterclaim alleging that Transamerica interfered with the business operations and opportunities of the defendant corporations and breached a fiduciary duty owed to borrowers and guarantors.

## III

Before the court is plaintiff's motion for summary judgment on the Gavins' counterclaim of interference in business relations and breach of fiduciary duty. The court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Where, as here, the non-moving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial; merely stating that the non-moving party cannot meet its burden at trial is not sufficient. *See Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

If—and only if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the counterclaim. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

## IV

The Gavins contend that Transamerica became their fiduciary when it undertook to find and finance purchasers for Warhawk's accounts receivable and that Transamerica breached its fiduciary duty when it refused to finance All Service's proposed purchase. Further, Transamerica allegedly interfered with Warhawk's business opportunities with All Service.

However, both of these claims were waived by guarantors, John and Carol Gavin, when they signed the amended settlement and forbearance agreement of August 5, 1992. Paragraph twelve of the agreement provides:

*Release of Lender.* Borrower and Guarantors hereby fully and unconditionally waive, release and forever discharge Lender and its predecessors (including Borg–Warner Acceptance Corporation) and their parents ... and agents (herein "Released Parties"), past or present, from all causes of action, claims, liability, costs, and damages, direct or indirect, known or unknown, ... which they, ... now have or hereafter may have; related to or arising out of any or all of the following: the Loan Transaction, Note, Loan Agreement, Judgment, Action, and this Agreement and all actions previously taken by any of the Released Parties or any of their agents, attorneys and employees prior to execution of this Agreement.

■ Where contract language is plain, unambiguous, and capable of only one reasonable interpretation, construction of a contract is unnecessary. *Griffin v. Adams*, 175 Ga. App. 715, 716, 334 S.E.2d 42, 44 (1985); *Wheeler v. Jones County*, 101 Ga.App. 234, 236, 113 S.E.2d 238 (1960). The language of paragraph twelve is unambiguous; the paragraph can only be interpreted so as to release Transamerica and its agents from liability for guarantors' counterclaim. The conduct complained of occurred prior to August 5, 1992, when defendants signed the release agreement. Therefore, defendants released Transamerica from liability for these actions.

■ Guarantors have raised duress as an affirmative defense to enforcement of the settlement contract. Duress, accomplished through threats which restrain the free will of the party and induce his consent, renders a contract voidable. O.C.G.A. § 13–5–6.

However, "an act must be wrongful to constitute duress, and it is not duress to threaten to do what one has a legal right to do. The threat to bring a civil proceeding against a person is not duress in a legal sense." *Cannon v. Kitchens,* 240 Ga. 239, 240, 240 S.E.2d 78, 80 (1977) (citation omitted) (*quoted in Fields v. Thompson,* 164 Ga.App. 331, 333, 297 S.E.2d 100, 101 (1982)).

Mr. Gavin states that Transamerica continually disrupted his business and personal life with telephone calls and that Transamerica forced him to sign the forbearance with the threat of filing a civil suit to collect the accelerated loan. Looking at these facts in the light most favorable to the Gavins, there is no genuine issue of material fact with regard to the defense of duress or enforcement of the contract. Threats to bring a civil suit do not constitute duress. The facts of this case are remarkably similar to those of *Fields v. Thompson.* In *Fields,* the lender made threats over the telephone, warning the borrower that "he would get his money or sue for it". *Fields,* 164 Ga.App. 331, 332, 297 S.E.2d 100. The Georgia Court of Appeals found that summary judgment was properly granted because the allegations were insufficient to demonstrate duress. *Id.* Likewise, the Gavins have not alleged facts which, if fully believed, constitute duress. Finding that defendants voluntarily released Transamerica from liability for the complained of actions, the court need not address the merits of the claims of breach of fiduciary duty and interference with business relations.

Accordingly, Transamerica's motion for summary judgment is GRANTED with respect to the Gavins' counterclaims.

## V

In another motion, plaintiff moves to strike certain exhibits to defendants' brief in opposition to the motion for summary judgment. The motion is **MOOT** at this time. When the stay is lifted and the court considers the motion for summary judgment on plaintiff's breach of contract claim, plaintiff can reassert the objection.

In conclusion, Transamerica's claim for breach of contract against the Gavins is **STAYED**. Plaintiff's motion for summary judgment on the Gavins' counterclaims is **GRANTED**. The motion to strike is **MOOT**.

**SO ORDERED.**